**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Terrorist Attacks on September 11, 2001 | 03 MDL 1570 (GBD)(SN) |

This document relates to:
*Horace Morris, et al. v. Islamic Republic of Iran*, No. 1:18-cv-05321 (GBD)(SN)
*August Bernaerts, et al. v. Islamic Republic of Iran*, No. 1:19-cv-11865 (GBD)(SN)

**NON-U.S. NATIONAL PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR PARTIAL FINAL DAMAGES JUDGMENTS AGAINST THE ISLAMIC
<u>REPUBLIC OF IRAN</u>**

ANDERSON KILL P.C.
Jerry S. Goldman, Esq.
Bruce E. Strong, Esq.
Alexander Greene, Esq.
1251 Avenue of the Americas
New York, NY 10020
Tel:      (212) 278-1000
Fax:     (212) 278-1733
Email:  jgoldman@andersonkill.com
            bstrong@andersonkill.com
            agreene@andersonkill.com

*Attorneys for Plaintiffs*

Dated:  New York, New York
            May 24, 2024

## <u>TABLE OF CONTENTS</u>

**Page**

(1)   PROCEDURAL BACKGROUND .................................................................................. 3

    A.   Applicable Orders ................................................................................ 3

    B.   Related Cases ........................................................................................ 4

    C.   Iran Was Duly Served and Default Was Duly Entered ........................... 6

(2)   THE MOVING PLAINTIFFS ARE ON A PENDING MOTION FOR JUDGMENTS AS TO LIABILITY AND DAMAGES FOR NON-ECONOMIC DAMAGES AGAINST IRAN ............................................................... 6

(3)   The Court Should Enter Damages Awards Against Iran and in Favor of Moving Plaintiffs in Amounts Previously Authorized. ................................................. 7

    A.   Background .......................................................................................... 7

    B.   Economic Damages for Estates ............................................................. 8

    C.   Punitive Damages ................................................................................ 10

    D.   Prejudgment Interest ........................................................................... 11

(4)   CONCLUSION ................................................................................................ 13

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashton v. al Qaeda Islamic Army*,
   02-CV-6977 (GBD)(SN) ................................................................ *passim*

*Baker v. Socialist People's Libyan Arab Jamahirya*,
   775 F. Supp. 2d 48 (D.D.C. 2011) .............................................................11

*Bauer v. Al Qaeda Islamic Army*,
   02-CV-7236 (GBD)(SN) ...........................................................3, 6, 12

*Est. of Heiser v. Islamic Republic of Iran*,
   466 F. Supp. 2d 229 (D.D.C. 2006) .............................................................4

*Flatow v. Islamic Republic of Iran*,
   999 F. Supp. 1 (D.D.C. 1998) .............................................................8

*Roth v. Islamic Republic of Iran*,
   78 F. Supp. 3d 379 (D.D.C. 2015) .............................................................9

*In re Sept. 11 Litig.*,
   802 F.3d 314 (2d Cir. 2015) .............................................................12

*In re Terrorist Attacks on September 11, 2001*,
   03-md-1570 ...........................................................4, 5, 11

*Valore v. Islamic Republic of Iran*,
   700 F. Supp. 2d 52 (D.D.C. 2010) .............................................................9

**Statutes**

28 U.S.C. § 1605A ...........................................................4, 6, 8, 10

28 U.S.C. § 1605B ...........................................................3, 7

49 U.S.C. § 40101 .............................................................12

Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L.
   No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101) ....................12

iii

## INTRODUCTION

A discrete number of non-U.S. Nationals were murdered during the September 11, 2001 attacks. The undersigned represents citizens from many nations who seek parity with their U.S. National counterparts.  Terrorism does not distinguish based on citizenship nor should this Court. Non-U.S. Nationals killed on 9/11, through their personal representatives, bring this motion for judgment of default against the Islamic Republic of Iran ("Iran").

For the reasons set forth below, the statements contained in the Declaration of Jerry S. Goldman, Esq., with exhibits appended thereto ("Goldman Declaration"), which is being filed contemporaneously with this Memorandum of Law, as well as those set forth in prior motions for damages made on behalf of other *O'Neill* wrongful death plaintiffs, certain non-U.S. National Plaintiffs in the above-captioned matters who are identified in Exhibit A[1] (the plaintiffs in Exhibit A are collectively the "Moving Plaintiffs") (which is Exhibit B to the Proposed Order) to the Goldman Declaration,[2] by and through their counsel, Anderson Kill P.C., respectfully move this Court for an Order:

(1) on behalf of the Moving Plaintiffs, awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit A, an award of economic damages in the amount as set forth in Exhibit A; AND,

---

[1] The Moving Plaintiffs are the personal representatives of a 9/11 decedent.  In all cases, they are submitting claims for compensatory damages as a result of the 9/11 decedent's death.  As noted below, each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the decedent. Goldman Declaration at ¶¶ 4-13.

[2] Exhibit A includes 9/11 decedent estates where the 9/11 decedent was known not to have been a U.S. National on September 11, 2001.

(2) awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

(3) granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(4) on behalf of the Moving Plaintiffs, granting permission for all other Plaintiffs in these actions not appearing in Exhibit A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(5) granting to the Moving Plaintiffs such other and further relief as this honorable court deems just and proper.

The Moving Plaintiffs are on a pending motion for judgment as to liability and damages for non-economic damages against Iran at ECF No. 9322 (September 5, 2023). All the Moving Plaintiffs seek a damages determination consistent with the determinations of prior subsets of the plaintiffs in the *O'Neill* cases that were granted judgments. The Moving Plaintiffs, like thousands of other similarly situated plaintiffs, request entry of final default judgment against Iran in the amounts indicated in Exhibit A.

The only material difference between the thousands of Plaintiffs with damages judgments against Iran and the Moving Plaintiffs, is that the Moving Plaintiffs were not U.S. Nationals on September 11, 2001. Nonetheless, the Moving Plaintiffs' claims against Iran are fully supported by existing record evidence that should be applied to Moving Plaintiffs' common law claims for wrongful death and survival. Thus, this Court should enter damages judgments against Iran for

2

Moving Plaintiffs' common law claims in accordance with 28 U.S.C. § 1605B ("JASTA") and

applicable common law, as it did for Manu Dhingra at ECF No. 9666 at 8.

## DISCUSSION

**(1)    PROCEDURAL BACKGROUND**

### A.    Applicable Orders

This motion is being submitted in accordance with various procedural orders entered by

this Court, and the form of this motion and the relief requested herein are intended to comply

with various Orders of this Court, including the following:

> a.      The Court's January 24, 2017 Order, ECF No. 3435,[3] requiring that "[a]ll
> further motions for final judgment against any defaulting defendant shall be
> accompanied by a sworn declaration attesting that the attorney has (1) complied
> with the due diligence safeguards [referenced in Section II.D. of the January 23,
> 2017 letter from the Plaintiffs' Executive Committee (ECF No. 3433)] and (2)
> personally verified that no relief has previously been awarded to any plaintiff
> included in the judgment (or, if relief has been awarded, the nature of that relief)."
> For compliance with the required sworn declaration, please see paragraph 11
> below.
>
> b.      The Court's October 14, 2016 Order, ECF No. 3363, concerning the
> amounts of solatium damage awards.
>
> c.      The Court's October 14, 2016 Order, ECF No. 3362, related to the cases
> captioned as *Bauer v. Al Qaeda Islamic Army*, 02-CV-7236 (GBD)(SN) and
> *Ashton v. al Qaeda Islamic Army*, 02-CV-6977 (GBD)(SN).
>
> d.      The Court's October 28, 2019 Order, ECF No. 5234, setting forth updated
> procedural rules.
>
> e.      The Court's October 28, 2019 Order, ECF No. 5338, setting forth the
> scheduling order.
>
> f.      The Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures
> for filing expert reports submitted in support of default judgments.

---

[3] All ECF numbers are to the MDL docket unless stated otherwise.

g.      The Court's September 22, 2023 Order, ECF No. 9355, setting forth
procedures for default judgment motions.

**B.      Related Cases**

Relying on evidence and arguments[4] submitted by plaintiffs in *In re Terrorist Attacks on
September 11, 2001*, 03-md-1570, the consolidated multidistrict litigation arising out of the
September 11th attacks, this Court, on December 22, 2011, and again on August 31, 2015,
granted Orders of Judgment on Liability in favor of certain of the *Havlish*, *Ashton*, *O'Neill*,
*Federal Insurance*, and *Hoglan* groups of plaintiffs against Iran (*see* ECF Nos. 2516, 3014,
3016, 3020, 3020-23).  Subsequently, other liability findings were made for additional *O'Neill*
plaintiffs. After granting *Havlish* plaintiffs' Order of Default Judgment on Liability, this Court
considered the issue of damages suffered by the *Havlish* plaintiffs and their decedents. Upon the
*Havlish* plaintiffs' submissions, on October 3, 2012 this Court found, among other things, that
"Plaintiffs may recover for [, inter alia,] solatium…in an action under Section 1605A. 28 U.S.C.
§ 1605A(c)(4). In such an action, …family members can recover solatium for their emotional
injury; and all plaintiffs can recover punitive damages." ECF No. 2623 at 2-3, quoting *Valore v.
Islamic Republic of Iran*, 700 F. Supp. 2d 52, 83 (D.D.C. 2010). This Court also found that the
following solatium awards for family members are appropriate, as an upward departure from the
framework in *Est. of Heiser v. Islamic Republic of Iran*, 466 F. Supp. 2d 229 (D.D.C. 2006).

| **Relationship of Decedent** | **Solatium Award** |
| --- | --- |

---

[4] In each of the Orders of Judgment regarding plaintiffs' claims against Iran in the *In re Terrorist Attacks
on September 11, 2001* multidistrict litigation, the Court premised its determination "[u]pon consideration
of the evidence submitted by the Plaintiffs in filings with this Court on May 19, 2011, July 13, 2011, and
August 19, 2011, and the evidence presented at the December 15, 2011, hearing on liability, together with
the entire record in this case." ECF Nos. 2516, 3014, 3016, 3020-22; *see also* ECF No. 3023
(substantially similar language).

4

| Spouse | $12,500,000 |
|--------|-------------|
| Parent | $8,500,000 |
| Child | $8,500,000 |
| Sibling | $4,250,000 |

ECF No. 2623 at 4.

The Court has applied the same solatium values to claims of other solatium plaintiffs in *Burnett* (ECF Nos. 3666, 4023, 4126, 4146, 4175, 5061, 5062, 5087, 5138, and 5356) and other solatium plaintiffs in other cases coordinated in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation. *See*, e.g., ECF Nos. 3175 at 2, 3300 at 1, 3358 at 9, 3363 at 16, 3399, and 3977 at 7.

In that same decision in *Havlish*, this Court also found that Plaintiffs are entitled to punitive damages under the Foreign Sovereign Immunities Act ("FSIA") in an amount of 3.44 multiplied by their compensatory damages award. ECF No. 2623 at 5. The Court has applied that 3.44 multiplier also to judgments in *Ashton*. *See* ECF No. 3175 at 3 (Report and Recommendation to apply 3.44 punitive multiplier); ECF No. 3229 at 1 (Order adopting in its entirety Report and Recommendation to apply 3.44 punitive multiplier). The Court applied the 3.44 punitive multiplier to the compensatory awards previously awarded in *Burnett*. ECF No. 3666. However, in *Hoglan*, another case in this multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice. ECF Nos. 3358 at 11-16, 3363 at 28. Judge Daniels adopted Magistrate Judge Netburn's Report and Recommendation in its entirety. ECF Nos. 3383 at 2, 3384 at 6.

5

In the *Havlish* decision, this Court also found that prejudgment interest was warranted for the Plaintiffs' solatium damages. ECF No. 2623 at 5. The *Havlish* plaintiffs sought application of a 4.96% interest rate, which the magistrate judge recommended (ECF No. 2619 at 13-14) and Judge Daniels adopted (ECF No. 2623 at 5). In *Ashton*, plaintiffs sought, and the magistrate judge recommended, application of a statutory nine percent simple interest rate for prejudgment interest. ECF No. 3175 at 7-8. Judge Daniels adopted the magistrate judge's report and recommendation and applied the nine percent interest rate in multiple instances in *Ashton* and *Bauer*. *See* ECF Nos. 3229 at 2; 3300 at 1, 3341 at 1. However, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent rate for prejudgment interest should be applied to all solatium claims. ECF Nos. 3358 at 17-20, 3363 at 28-29. Judge Daniels adopted Judge Netburn's *Hoglan* Report and Recommendation in its entirety and applied an interest rate of 4.96 percent per annum, compounded annually. ECF Nos. 3383 at 2, 3384 at 6. The Court applied that interest rate, 4.96 percent per annum, to other plaintiffs' awards in *Burnett*.

On March 26, 2024, this Court extended the Court's prior findings under 28 U.S.C. § 1605A to the common law claims of non-citizens in its decision which awarded Manu Dhingra a judgment at ECF No. 9666.

### C.    Iran Was Duly Served and Default Was Duly Entered.

As set forth in Exhibit A to the Proposed Order, Plaintiffs herein duly served Iran. The Clerk's Office, upon Plaintiffs' applications, issued Clerk's Certificates of Default.

### (2)    THE MOVING PLAINTIFFS ARE ON A PENDING MOTION FOR JUDGMENTS AS TO LIABILITY AND DAMAGES FOR NON-ECONOMIC DAMAGES AGAINST IRAN

The Moving Plaintiffs are on a pending motion for judgment as to liability and damages for non-economic damages against Iran at ECF No. 9322 (September 5, 2023). All the Moving

6

Plaintiffs seek a damages determination consistent with the determinations of prior subsets of the plaintiffs in the *O'Neill* cases that were granted judgments. The Moving Plaintiffs, like thousands of other similarly situated plaintiffs, request entry of final default judgment against Iran in the amounts indicated in Exhibit A.

**(3)   THE COURT SHOULD ENTER DAMAGES AWARDS AGAINST IRAN AND IN FAVOR OF MOVING PLAINTIFFS IN AMOUNTS PREVIOUSLY AUTHORIZED.**

   **A.   Background**

Plaintiffs now respectfully request that this Court grant them judgments awarding them (1) economic damages for the plaintiffs so designated on Exhibit A as set forth in the expert reports attached as Exhibit B to the Goldman Declaration; (2) prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment; (3) permission for plaintiffs identified in Exhibit A to seek punitive damages, or other damages at a later date; and (4) for all other Plaintiffs not appearing on Exhibit A, to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed.

The Moving Plaintiffs are the estates of victims who perished on 9/11, in claims asserted by their personal representatives, as demonstrated by documentary evidence in the form of official documents from probate and administration proceedings from Surrogate's Court, Probate Court, Orphan's Court, and similar judicial bodies.  *See* Goldman Declaration at ¶¶ 4-13.

Each personal representative has provided the undersigned counsel with proof that he or she has been appointed by the court as the personal representative of the deceased relative and/or 9/11 decedent estate. This Court should adopt and apply the damages procedure for non-U.S. National Plaintiffs' § 1605B claims that has been applied numerous times in this case to actions

7

maintained under § 1605A. The Court previously adopted the same damages rubric form personal injury claims when it granted judgment in favor of Manu Dhingra. It would not make sense to apply the same damages rubric for a personal injury claim but not for solatium or death claims. Equity dictates that non-U.S. National Plaintiffs be entitled to the same damages regime as had been applied to § 1605A claims throughout this case. *See* ECF No. 2618 at 14 (awarding *Havlish* plaintiffs common law damages against non-sovereign defendants in same amounts as § 1605A claims against Iran "under traditional tort principles" even though *Havlish* plaintiffs did not maintain Anti-Terrorism Act claims against these defendants and Section 1605A claims were inapplicable as to these defendants).

In an October 12, 2016 Report and Recommendation issued by Magistrate Judge Netburn (and adopted by Judge Daniels), while addressing the appropriate rate of prejudgment interest, the Court provided a discussion of "common law wrongful death actions" in New York and stating that pecuniary damages—like those sought for the estates of 9/11-decedent estates in this case under both the Anti-Terrorism Act, 18 U.S.C. § 2333(a), and FSIA—are to be awarded in a wrongful-death action in New York. ECF No. 3358 at 18.

Accordingly, while JASTA confers jurisdiction, the appropriate damages framework for Moving Plaintiffs' common law claims should be the same framework that has been applied to claims maintained under § 1605A, as set forth below and as the Court previously applied in the Manu Dhingra personal injury judgment. ECF No. 9666 at 9.

### B.    Economic Damages for Estates

The FSIA specifically provides for economic damages. *See* 28 U.S.C. § 1605A(c).  The economic damages provision is "designed to compensate [a] decedent's heirs-at-law for economic losses which result from [the] decedent's premature death." *Flatow v. Islamic Republic*

8

*of Iran*, 999 F. Supp. 1, 27 (D.D.C. 1998).  Accordingly, "the beneficiaries of each decedent's estate [are]…entitled to recover the present value of economic damages, including lost wages that the decedents might reasonably have been expected to earn but for their wrongful deaths." *Valore*, 700 F. Supp. 2d at 81-82 (D.D.C. 2010), citing *Heiser*, 466 F.Supp.2d at 229.  Thus, for example, United States District Court Judge Royce C. Lamberth, in a series of decisions issuing final judgments Iran under the FSIA, has held Iran "liable for the economic damages caused to decedents' estates." *Roth v. Islamic Republic of Iran*, 78 F. Supp. 3d 379, 399-400 (D.D.C. 2015), quoting *Valore*, 700 F.Supp.2d at 78.[5]

Previously, this Court awarded economic damages in prior Iran cases for the "economic losses stemming from the wrongful death of the decedent[.]" *See* ECF No. 2623 at 2-3. In doing so, it adopted the economic loss calculations set forth in the plaintiffs' economic expert reports.

The Estates set forth in Exhibit A, which provided economic expert reports, transmitted to the Court in the Goldman Declaration, seek economic damages, similar to the plaintiffs in the prior Iran cases in this Court under the standards set in the District of Columbia cases cited herein.  Goldman Declaration at ¶¶ 15-21.

As described at length in the Goldman Declaration, plaintiffs retained the services of an expert, John F. Beauzile, who possesses a Master's Degree in Actuarial Science from Columbia University ("Expert"), to evaluate the economic losses resulting from the 9/11 decedent's death as a result of the 9/11 attacks.  Goldman Declaration at ¶¶ 18-21.

---

[5] In adopting this estate-accumulations calculation, Judge Lamberth recognized that case law under the FSIA was "develop[ing]…a federal standard" and looked to the law of the District of Columbia, which it concluded was "an appropriate model" to adopt and which calculated economic damages as the loss of accretions to the decedent's estate. *Valore*, 700 F.Supp. 2d at 82.

9

As described in more detail in the Goldman Declaration, and the Expert's Declaration (which is Exhibit B to the Goldman Declaration), we obtained, generally through a Freedom of Information Act ("FOIA") request, entire September 11th Victim Compensation Fund ("VCF") files for a substantial number of the *O'Neill* plaintiffs.[6]  Those files, along with other materials provided by the clients, contained various economic expert reports, VCF applications, VCF work papers and distribution plans, VCF determinations, underlying economic documents, and the like.  Using methodology and assumptions described in his declaration, relying on earlier expert reports, determinations by the VCF, and other documents, the Expert prepared up-to-date economic loss expert reports, copies of which are deemed appended to the Expert's Declaration (Exhibit B) and being filed on ECF with access restricted to the Court pursuant to the Court's May 5, 2022 Order, ECF No. 7963, setting forth procedures for filing expert reports ("Expert Reports") in support of default judgments.

Based on the foregoing, the Moving Plaintiffs respectfully ask that this Court award them economic damages in the amounts set forth in Exhibit A to the Goldman Declaration, as supported by the Expert Reports.

### C.     Punitive Damages

Moving Plaintiffs are also entitled to punitive damages under the FSIA. 28 U.S.C. § 1605A(c)(4).  In the *Havlish* Report and Recommendation on damages, the magistrate judge explained that a "3.44 ratio 'has been established as the standard ratio applicable to cases arising out of' terrorist attacks."  ECF No. 2618 at 13 (quoting *Est. of Bland v. Islamic Republic of Iran*,

---

[6] We are still awaiting receipt of additional files which has adversely become impacted by both "normal" delays in receiving responses to FOIA requests and COVID.

831 F. Supp. 2d 150, 158 (D.D.C. 2011)).  This Court adopted that recommendation and awarded punitive damages on each compensatory damages category at a ratio of 3.44 (punitive) to 1 (compensatory).  ECF No. 2623 at 2.  The Court has applied that ratio to awards for plaintiffs in other related cases.  *See, e.g.*, ECF No. 3175 at 3 (Magistrate Judge Maas Report and Recommendation to apply a 3.44 punitive multiplier); ECF No. 3229 at 1 (Judge Daniels adopting in its entirety Judge Maas's Report and Recommendation to apply a 3.44 multiplier); ECF No. 3300 at 1 and Exhibit A (Judge Daniels applying 3.44 punitive multiplier to claims in *Ashton*).

However, in *Hoglan*, another case in the *In re Terrorist Attacks on September 11, 2001* multidistrict litigation, Magistrate Judge Netburn recommended that the plaintiffs' request for punitive damages be denied without prejudice.  ECF No. 3363 at 28.  Judge Daniels adopted Magistrate Judge Netburn's Report in its entirety, denying without prejudice the plaintiffs' request for punitive damages.  ECF No. 3384 at 6.

In light of the Court's decision in related litigation to defer determination of punitive damage issues until a later stage of the litigation, Plaintiffs herein request permission to address the issue of punitive damages at a later date.  *See*, e.g., ECF No. 3666 (Judge Daniels' Order in *Burnett* authorizing plaintiffs to make an application for punitive damages at a later date consistent with any future rulings of the Court).

### D.    Prejudgment Interest

An award of prejudgment interest is within the sound discretion of a trial court and is warranted when plaintiffs are delayed in recovering compensation for non-economic injuries caused by acts of terrorism.  *See Baker v. Socialist People's Libyan Arab Jamahirya*, 775 F. Supp. 2d 48, 86 (D.D.C. 2011).  This Court awarded the *Havlish* plaintiffs prejudgment interest

at a rate of 4.96% on their pain and suffering damages awards, to be calculated from September 11, 2001, until the date of judgment. ECF No. 2618 at 13-14.  This Court, recognizing that prejudgment interest was appropriate in cases such as these cases, adopted the magistrate judge's reasoning, finding that an award of prejudgment interest was appropriate and accepting the rate of 4.96%, as proposed by the *Havlish* plaintiffs' expert.

After the *Havlish* award, plaintiffs in *Ashton* and *Bauer* proposed, and the Court agreed, that prejudgment simple interest at the New York State statutory rate of nine percent per annum was appropriate in cases where the injuries arose in New York and the prejudgment interest used in *Havlish*, 4.96 percent per annum, compounded annually, should be reserved for only those cases where the injuries arose in other states.  *See* ECF Nos. 3229 at 2, 3300 at 1, 3341 at 1.

The Second Circuit has held that New York State's statutory prejudgment interest rate should apply to the damages awarded to World Trade Center complex leaseholders in their litigation against American Airlines and United Airlines brought under the federal Air Transportation Safety and System Stabilization Act ("ATSSSA").  Pub. L. No. 107-42, 115 Stat. 230 (2001) (codified as amended at 49 U.S.C. § 40101); *In re Sept. 11 Litig.*, 802 F.3d 314, 343 (2d Cir. 2015).  In that case, the Second Circuit concluded that a federal cause of action under the ATSSSA must look to state rules concerning prejudgment interest.  *Id.*  Accordingly, the Second Circuit held that New York's statutory prejudgment interest rate of nine percent as opposed to a lower rate crafted under federal law, had to be applied to the plaintiffs' claims related to the 9/11 Attacks.  *Id.*

However, more recently, in *Hoglan*, Magistrate Judge Netburn recommended that the 4.96 percent interest rate for prejudgment interest should be applied to all of the solatium claims.

docs-100698195.1

ECF No. 3363 at 28-29.  Judge Daniels adopted Magistrate Judge Netburn's *Hoglan* Report in its entirety and applied the interest rate of 4.96 percent per annum, compounded annually to all of the claims.  ECF No. 3384 at 6.  Thereafter, in *Burnett/Iran II*, the Court again awarded prejudgment interest of 4.96 per annum, compounded annually.

The Court applied these decisions and awarded prejudgment interest of 4.96 per annum, compounded annually to Manu Dhingra as well in the non-citizen judgment. ECF No. 9666 at 10.

In light of the Court's decisions in *Hoglan*, *Burnett*, and the Manu Dhingra judgment, applying the 4.96 percent rate to prejudgment interest, the Moving Plaintiffs respectfully request that the clerk be directed to award prejudgment interest at the rate of 4.96 percent per annum, compounded annually, running from September 11, 2001, until the date of the judgment.

**(4)**     **CONCLUSION**

For all of the reasons herein, in the Goldman Declaration, and in the papers previously submitted to this Court in support of damages against Iran in this MDL, Moving Plaintiffs respectfully request that this Honorable Court enter an Order:

(1)     on behalf of the Moving Plaintiffs, awarding the estates of the 9/11 decedents, through their personal representatives and on behalf of all survivors and all legally entitled beneficiaries and family members of such 9/11 decedent, as identified in Exhibit A, an award of economic damages in the amount as set forth in Exhibit A; AND,

(2)     awarding the Moving Plaintiffs prejudgment interest at the rate of 4.96 percent per annum, compounded annually for the period from September 11, 2001 until the date of the judgment for damages; AND,

13

(3)      granting the Moving Plaintiffs permission to seek punitive damages, economic damages, and other appropriate damages, at a later date; AND,

(4)      on behalf of the Moving Plaintiffs, granting permission for all other Plaintiffs in these actions not appearing in Exhibit A to submit applications for damages awards in later stages, to the extent such awards have not previously been addressed; AND,

(5)      granting to the Moving Plaintiffs such other and further relief as this honorable court deems just and proper.

Dated:    New York, New York                      Respectfully submitted,
          May 24, 2024

                                                  /s/ Jerry S. Goldman
                                                  ANDERSON KILL P.C.
                                                  Jerry S. Goldman, Esq.
                                                  Bruce E. Strong, Esq.
                                                  Alexander Greene, Esq.
                                                  1251 Avenue of the Americas
                                                  New York, NY 10020
                                                  Tel:  (212) 279-1000
                                                  Fax: (212) 278-1733
                                                  Email:  jgoldman@andersonkill.com
                                                          bstrong@andersonkill.com
                                                          agreene@andersonkill.com
                                                  *Attorneys for Plaintiffs*

14